# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT WHITE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07–0838 (JDB) |
| ) | |
| FEDERAL BUREAU OF INVESTIGATION, ) | |
| ) | |
| UNITED STATES ATTORNEYS, ) | |
| ) | |
| and ) | |
| ) | |
| INTERNAL REVENUE SERVICE, ) | |
| ) | |
| Defendants. ) | |

# DEFENDANTS' MOTION TO DISMISS OR,
# IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendants, the Federal Bureau of Investigation, the United States Attorney's Office, and

the Internal Revenue Service, by and through undersigned counsel, hereby move, pursuant to

Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss this action.  In the alternative, this Court should

enter summary judgment in favor of Defendants, pursuant to Fed. R. Civ. P. 56, because there is

no genuine issue as to any material fact and the Defendants are entitled to judgment as a matter

of law.  In support of their motion, Defendants submit a Memorandum of Points and Authorities,

a Statement of Material Facts Not In Dispute, Public Information Inmate Data for Plaintiff, the

Declarations of David M. Hardy, David Luczynski, Darlene Stewart, Walter C. Olgy, and Mary

Ellen Keys, and copies of relevant pieces of correspondence, as Exhibits 1-12.

Plaintiff should take notice that any factual assertions contained in the accompanying

affidavits and other attachments in support of Defendants' motion will be accepted by the Court

as true unless Plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in Defendants' attachments. See, e.g., Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992); Local Civil Rule 7(h); Fed. R. Civ. P. 56(e). Specifically, Rule 56(e) of the Federal Rules of Civil Procedure provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).[1]

The grounds for the motion are set forth in more detail in the accompanying memorandum of points and authorities in support of the motion. A proposed Order consistent with this motion is attached hereto.

---

[1] Consistent with the guidance of the Court of Appeals in Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992), Defendants remind this *pro se* litigant that his failure to respond or contest Defendants' motion may lead to an entry of adverse judgment against him. In Fox v. Strickland, 837 F.2d 507, 509 (D.C. Cir. 1988), the Court of Appeals noted that a *pro se* party may lose if he fails to respond to a dispositive motion. See also Ham v. Smith, 653 F.2d 628, 629-30 (D.C. Cir. 1981). Failure to respond to Defendants' motion may result in the district court granting the motion and dismissing the case.

Respectfully submitted,


\_\_/s/_____

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


\_\_/s/_____

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


\_\_/s/_____

JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROBERT WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07–0838 (JDB) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
| | ) |
| UNITED STATES ATTORNEYS, | ) |
| | ) |
| and | ) |
| | ) |
| INTERNAL REVENUE SERVICE, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF THEIR MOTION TO DISMISS, OR**
**IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the

Privacy Act of 1974 ("the Privacy Act"), 5 U.S.C. § 552a, and pertains to the processing of two

separate FOIA requests which Plaintiff sent to the Federal Bureau of Investigation ("FBI") and to

the Internal Revenue Service ("IRS"), as well as a third FOIA request which Plaintiff claims that

he sent to the United States Attorneys Office ("USAO") in Washington, D.C.  Specifically,

Plaintiff alleges that he mailed separate FOIA requests to the FBI, USAO, and IRS "[o]n or about

January 29, 2007," and that none of those three agencies responded within 20 days of his

respective requests.  See Docket Entry No. 1, Complaint ("Compl.") at 2, ¶¶ I-III.  He claims that

these three agencies "have certain reports and documents that were withheld from Plaintiff" and

he seeks "production of the requested reports and documents."  See Compl. at 1-2.

Plaintiff's claim against the USAO should be dismissed because the Executive Office for United States Attorneys never received a FOIA request from Plaintiff.  Plaintiff's claim against the FBI must be dismissed, or in the alternative, summary judgment must be granted in the FBI's favor, because the FBI conducted a reasonable search of the files located in its headquarters but was unable to locate any responsive documents concerning Plaintiff despite its best efforts.  With respect to the portion of the FOIA request which Plaintiff sent to the FBI concerning third parties, the FBI adhered to its longstanding policy of neither confirming nor denying that it has records concerning third parties, a policy which is consistent with the Privacy Act and the FOIA and has been upheld by courts within this Circuit.  Plaintiff's claim against the IRS is unavailing for several reasons.  First, Plaintiff mailed his FOIA request to the incorrect address and failed to reasonably describe the records he sought, as required by the IRS' regulations.  Despite being given several opportunities to do so, Plaintiff failed to perfect the FOIA request which he sent to the IRS.  Thus, he failed to properly exhaust his administrative remedies with respect to that request.  Second, in any event, the IRS's response to Plaintiff's FOIA request was reasonable and the documents he sought from the IRS would have been exempt from disclosure under both the FOIA and the Privacy Act.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    General Background on Plaintiff

Plaintiff, Robert White, was formerly an elected official in Gary, Indiana, who served on the city's Common Council.  See, e.g., United States v. Robert White, 472 F. 3d 458, 460 (7th Cir. 2006) (decision upholding Plaintiff's criminal conviction).  On May 19, 2005, the

2

government indicted Mr. White for numerous counts of wire and mail fraud as well as money laundering. See id. at 460; see also Criminal Docket Sheet for 2:05-cr-00079-RL-APR (N.D. Ind.), Docket Entry No. 1. The underlying conduct that the government alleged to be fraudulent was White's depriving the citizens of Gary, Indiana of his honest services. Id. Specifically, the government alleged that Indiana law required a public servant such as Mr. White to either refrain from deriving a profit from contracts with the city of Gary, or to disclose the details of his conflict of interest, and that Mr. White had breached this duty by helping to cause a city fence building contract to be awarded to a company owned by his nephew and arranged to have about $25,000 worth of profit routed through his nephew and eventually into his own bank account. Id. Following a trial, a jury returned a verdict of guilty on all counts, and in March 2006, the United States District Court for the Middle District of Florida sentenced Plaintiff to 63 months imprisonment, followed by a 2 year term of supervision, and restitution in the amount of $25,000 for the offenses of Money Laundering, Mail Fraud, and Wire Fraud. See Exhibit ("Ex.") 1 (Public Information Inmate Data for Plaintiff) at 002; Criminal Docket Sheet for 2:05-cr-00079-RL-APR (N.D. Ind.), Docket Entry Nos. 53-55; Robert White, 472 F. 3d at 461. Plaintiff then appealed his conviction to the Seventh Circuit, which upheld the conviction. See Criminal Docket Sheet for 2:05-cr-00079-RL-APR (N.D. Ind.), Docket Entry Nos. 56-68; Robert White, 472 F. 3d 458 (7th Cir. 2006); id. at 460 (noting that "[a]t its heart, this case is about a corrupt politician who got caught with his hand in the cookie jar."); id. at 461-66 (rejecting Plaintiff's challenges to the trial jury instructions, upholding the trial court's exclusion of his proffered jury instruction, decision to prevent his counsel from reading the entire Indiana statute to the jury, and application of sentencing enhancements to Plaintiff.)

3

Today Plaintiff is a federal inmate who was most recently housed at the Federal Prison Camp in Duluth, Minnesota, but is currently in transit. See Compl. at 1 (case caption); Search Results on BOP Inmate Locator for Register Number "09350-027," available at http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch&needingMoreList=false &IDType=IRN&IDNumber=08350-027; see also Ex.1 (Public Information Inmate Data for Plaintiff) at 001. Plaintiff has a projected release date of November 5, 2010. Id. at 001-003.

## II.    The FOIA Request which Plaintiff sent to the FBI and the FBI's Response

By letter to the FBI's headquarters ("FBIHQ"), dated January 28, 2007, Plaintiff submitted a request for information under the FOIA and Privacy Act. See Ex. 2, Declaration of David M. Hardy ("Hardy Decl.") ¶ 5; Ex. 3 (Plaintiff's January 28, 2007 letter to the FBI)[2]; see also Compl. at 2, ¶ I. Plaintiff's FOIA/Privacy Act request was for

    1. [R]eport (s), documents, faxes and electronic computer messages by FBI agents concerning Robert White of Gary, Indiana. The FBI reports concerning Scott L. King, Darnell Bolton, Kimberly Lyles, Stacy Shotwell all of Gary, Indiana, and Jesus Montes of Chicago, Illinois.

    2. Names and report (s) of any unknown persons that were interviewed by the FBI concerning Robert White: Court Case # 2:05-CR-00079, in Hammond, Indiana.

    3. Jewell Harris, Sr., statements to the FBI concerning Robert White.

    4. [A]ny and all electronic surveillance of Robert White by the FBI.

    5. The official Investigation Report by the FBI concerning Robert White unredacted and no withheld reports.

See Ex. 3 (Plaintiff's January 28, 2007 letter to the FBI); Ex. 2, Hardy Decl. ¶ 5.

---

    [2] Plaintiff's social security number and date of birth have been redacted from the as filed version of the January 28, 2007 letter, in order to protect his privacy.

By letter dated February 20, 2007, FBIHQ stated that it had assigned plaintiff's request the Request Number 1070069, and explained that it had conducted a search of the indices of the Central Records System ("CRS") at FBIHQ for records responsive to his request and was unable to identify responsive records.  See Ex. 2, Hardy Decl. ¶ 6; Ex. 4 (FBI's February 20, 2007 letter to Plaintiff).  This letter indicated, however, that the search located references to a name similar to Robert White.  Id.  The FBI asked Plaintiff to furnish certain identifying information such as complete name, prior addresses, current and former employment information, and/or any specific incidents concerning his participation in an investigation that may have been conducted by the FBI.  Id.  In response to Plaintiff's FOIA request, the FBIHQ conducted a search of both its Central Records System and its Electronic Surveillance indices.  See Ex. 2, Hardy Decl. ¶¶ 19-21; see also id. at ¶¶ 9-14 (describing how the Central Records System is organized and searched); id. at ¶¶ 15-18 (describing how the Electronic Surveillance indices are organized and searched.)  Because Plaintiff directed his FOIA request to FBIHQ and not to any of the FBI's field offices, the FBI confined its search for responsive documents to its headquarters, and DOJ regulations put Plaintiff on constructive notice that it would do so.  See id. at ¶ 22 (citing 28 C.F.R. §§ 16.3(a) and 16.41(a)).

The February 20, 2007 letter did not however respond to the portion of Plaintiff's request which sought documents concerning  six third-party individuals: Scott L. King, Darnell Bolton, Kimberly Lyles, Stacy Shotwell, Jesus Montes, and Jewell Harris, Sr.  See Ex. 2, Hardy Decl. at 2, n. 1; id. at ¶¶ 23-30.  The FBI neither confirmed nor denied that it had any documents concerning those third parties because Plaintiff had not provided a notarized Privacy Act form or proof of death with respect to any of those six individuals.  See id. at ¶¶ 23-30.  The FBI's policy

of neither confirming nor denying that it had documents in this instance was in keeping with a longstanding policy, which was based on the judgment that disclosure under such circumstances might violate the Privacy Act, and that any such documents would be covered by two FOIA exemptions.  See id. at ¶¶ 23-30 (explaining this policy, and citing to the Privacy Act, 5 U.S.C. § 552a(b), and to two FOIA exemptions, 5 U.S.C. §§ 552(b)(6) and 552(b)(7)(C)).

The FBI has no record of Plaintiff ever responding to its February 20, 2007 letter.  See Ex. 2, Hardy Decl. ¶ 7.  After waiting 30 days from the date of the February 20, 2007 letter, and not receiving further communication from him, the FBI administratively closed his request.  Id.

## III.    There is No Evidence that Plaintiff Ever Sent a FOIA Request to the USAO

The Executive Office for United States Attorneys ("EOUSA"), United States Department of Justice, is the office responsible for, among other things: responding to requests and litigation filed under both the FOIA and the Privacy Act; the reviewing of FOIA/Privacy Act requests for access to records located in the EOUSA and ninety-four United States Attorney offices ("USAOs") and the case files arising therefrom; the reviewing of correspondence related to requests, reviewing of searches conducted in response to requests; locating of responsive records; and the preparing of responses thereto by the EOUSA to assure that determinations to withhold (or to release) such responsive records are in accordance with the provisions of both the FOIA and the Privacy Act, as well as the DOJ regulations.  See Ex. 5, Declaration of David Luczynski ("Luczynksi Decl.") ¶¶ 1-3; see also Peralta v. United States Attorney's Office, 136 F.3d 169, 171 (D.C. Cir. 1998) (noting that EOUSA is "the entity responsible for responding to FOIA requests directed to local United States Attorney's Offices").

When requesters file a FOIA request with the EOUSA, it is in writing and generally delivered through the mail system operated by the US Postal Service. See id. at ¶ 4. Not all, though a large majority is sent using a confirmation receipt. See id. at ¶ 4. All mail received is opened immediately and date-stamped by the FOIA intake staff. See id. at ¶ 5. Each new request gets its own file opened up under the requester's name as well as assigned a FOIA number for identification and location purposes. See id. at ¶ 5. After that each FOIA request is entered into the computer filing system which is updated with new developments as they arise. See id. at ¶ 5.

To this day, EOUSA has no record of ever receiving any communication, nor a request from the Plaintiff. See id. at ¶ 6. To confirm that it has received no communication from Plaintiff, in connection with this litigation, EOUSA staff searched its files. See id. at ¶ 6. A search of EOUSA's computer system revealed another individual with a similar name but the request and entry itself dated back to 1997 indicating that it is a completely different matter. See id. at ¶ 6. In addition, the room used for storing recently-opened or pending FOIA requests was searched as well. See id. at ¶ 6. All the files in this room are arranged alphabetically and there were none found with Plaintiff's name. See id. at ¶ 6.

As far as EOUSA is concerned, and notwithstanding Plaintiff's claim to the contrary, Plaintiff has never submitted a FOIA request to the USAO or to EOUSA. See Compl. at 2, ¶ II; Ex. 5, Luczynksi Decl. at ¶ 7. An examination of the PACER system by EOUSA staff in the hopes of perhaps locating an exhibit in the form of the original request letter to EOUSA attached to the complaint has also proved fruitless. See id. at ¶ 7.

7

**IV.    The FOIA Request Which Plaintiff Sent to the IRS, and the IRS's Response**

By letter to the IRS, dated January 28, 2007, Plaintiff submitted a request for information under the FOIA and Privacy Act.  See Compl. at 2, ¶ III; Ex. 6, Declaration of Darlene Stewart ("Stewart Decl.") ¶ 2, Exhibit A; Ex. 7, Plaintiff's January 28, 2007 letter to the IRS.[3]  His request was addressed to:

> Internal Revenue Service
> 1111 Constitution Ave., N.W.
> Washington, D.C. 20224

See Ex. 6, Stewart Decl., Ex. A; Ex. 7, Plaintiff's January 28, 2007 letter to the IRS.  In his FOIA request, Plaintiff asked that the IRS produce "the Official Investigation Report[s] and persons interviewed concerning Robert White of Gary, Indiana: Court Case # 2:05-CR-00079 by the IRS Agents."  See Ex. 6, Stewart Decl. ¶ 3, Ex. A; Ex. 7, Plaintiff's January 28, 2007 letter to IRS.  The FOIA request was received by the IRS, and forwarded to the IRS's Baltimore Disclosure Office for its determination as to the appropriate Disclosure Office to handle the request on February 9, 2007.  See Ex. 6, Stewart Decl. ¶ 2, Ex. A, Ex. B; Ex. 7, Plaintiff's January 28, 2007 letter to the IRS (indicating date of receipt by the Baltimore Disclosure Office); Ex. 8, IRS's March 7, 2007 letter to Plaintiff.  On February 13, 2007, the IRS's Baltimore Disclosure Office forwarded the request to the Detroit Disclosure Office for processing.  See Ex. 6, Stewart Decl. ¶ 2, Ex. B; Ex. 8, IRS's March 7, 2007 letter to Plaintiff (indicating the date of receipt by the Detroit Disclosure Office).

By letter dated March 7, 2007, the IRS's Detroit Disclosure Office responded to

---

[3]  Plaintiff's social security number and date of birth have been redacted from the as filed version of this January 28, 2007 letter, in order to protect his privacy.

Plaintiff's request by informing him that additional information was needed before the Detroit

Disclosure Office would be able to respond to his FOIA request.  See Ex. 6, Stewart Decl. ¶¶ 3-4,

Ex. B; Ex. 8, IRS's March 7, 2007 letter to Plaintiff.  The March 7, 2007 letter informed Plaintiff

that the twenty day period for complying with his FOIA request would not begin until Plaintiff

perfected his request by providing the IRS with information regarding the specific division that

maintained the records which Plaintiff wished to access and any other information that could

help the IRS locate the records he had requested.  Id.  The letter requested that Plaintiff furnish

this information to the IRS's Detroit Disclosure Office within 30 days.  Id.

By letter dated March 16, 2007 and received by the Detroit Disclosure Office on March

16, 2007, Plaintiff submitted a form to the IRS's Detroit Disclosure Office titled "[a]ppeal of

[d]enial of F.O.I.A./PA [r]equest."  See Ex. 6, Stewart Decl. ¶ 5, Ex. C; Ex. 9, Plaintiff's March

16, 2007 letter to the IRS.  In this form, Plaintiff construed the IRS's March 7, 2007 letter as a

"[n]on-[r]esponsive [l]etter" and a denial of his FOIA request.  Id.  Plaintiff indicated that he

wished to administratively appeal this purported denial, and he further demanded that he be

provided a "specific indication of what material(s) is (are) being withheld, and what exemptions

are being claimed".  Id.  Plaintiff did not however attempt, in his March 16, 2007 letter, to perfect

his request by providing the information that had been requested in the IRS's March 7, 2007

letter.  Id.

By letter dated March 21, 2007, the IRS's Detroit Disclosure Office informed Plaintiff

that he did not have administrative appeal rights with respect to his January 28, 2007 FOIA

request because his request was deemed "imperfect."  See Ex. 6, Stewart Decl. ¶ 6, Ex. D; Ex.

10, IRS's March 21, 2007 letter to Plaintiff.  As such, the letter advised Plaintiff that until such

9

time as he perfected his request by supplying the additional requested information, his request could not be deemed denied.  Id.

The IRS's Detroit Disclosure Office did not receive any further communications from Plaintiff.  See Ex. 6, Stewart Decl. ¶ 7.  Subsequently, the Detroit Disclosure Office was informed that Plaintiff had filed a FOIA/Privacy Act lawsuit with respect to his January 28, 2007 FOIA request.  Id.

Subsequent to Plaintiff's filing of this lawsuit, the IRS's Detroit Disclosure Office determined that records responsive to Plaintiff's request were within the control of the IRS's Criminal Investigation Division, Chicago Field Office, but that those records in their entirety were grand jury protected information, exempt from disclosure under both the FOIA (exemption (b)(3) in conjunction with Fed. R. Crim. P. 6(e)) and exemption (j)(2) of the Privacy Act.  See Ex. 6, Stewart Decl. ¶ 8; Ex. 11, Declaration of Walter C. Olgy ("Olgy Decl.") *generally*; Ex. 12, Declaration of Mary Ellen Keys ("Keys Decl.") *generally*.


V.      **Plaintiff's Filing of a Complaint in this Court**

On May 7, 2007, Plaintiff initiated this action by filing a Complaint in the U.S. District Court for the District of Columbia, requesting a release of all records responsive to his January 28, 2007 FOIA/Privacy Act requests.  See Compl. *generally*.

## ARGUMENT

I.      **STANDARD OF REVIEW**

A.      **Motion to Dismiss (Fed. R. Civ. P. 12(b)(1) and 12(b)(6))**

Defendants move for dismissal under Rule 12(b)(1), as the Court arguably lacks

jurisdiction over several of Plaintiff's claims, and Rule 12(b)(6), as Plaintiff fails to state any claim upon which relief can be granted. Plaintiff bears the burden of establishing subject matter jurisdiction. See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); Oppermann v. U.S., 2007 W.L. 1748920, *2 (D.D.C. 2007); A.N.S.W.E.R. Coal. v. Kempthorne, 2007 W.L. 1703431, *4 (D.D.C. 2007); Brady Campaign to Prevent Gun Violence v. Ashcroft, 339 F.Supp.2d 68, 72 (D.D.C. 2004); Rann v. Chao, 154 F. Supp.2d 61, 64 (D.D.C. 2001), aff'd, 346 F.3d 192 (D.C. Cir. 2003); Thompson v. Capitol Police Bd., 120 F. Supp.2d 78, 81 (D.D.C. 2000) (observing that "[on] a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuasion to establish subject-matter jurisdiction by a preponderance of the evidence.")

A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in two ways. First, the court may determine the motion based solely on the complaint. See, e.g., Herbert v. Nat'l Acad. of Sci., 974 F.2d 192, 197 (D.C. Cir. 1992). Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence. Id.; Rann, 154 F. Supp.2d at 64 ("[t]he court is not required . . . to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations.")

Furthermore, a motion to dismiss brought pursuant to Rule 12(b)(6) may be granted if it is beyond doubt that a plaintiff can demonstrate no set of facts that supports his claim entitling him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir.2002) (observing that "[a] [r]ule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint"); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C.

11

Cir. 2000).  The Court must treat the Complaint's factual allegations as true, and must grant

Plaintiff "the benefit of all inferences that can be derived from the facts alleged."  See  Browning,

292 F.3d at 242 (internal quotations and citations omitted).  However, the court need not accept

inferences that are not supported by the facts alleged in the complaint, nor must the court accept

plaintiff's legal conclusions, even if they are cast in the form of factual assertions.  See, e.g., Bell

Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1965 (2007) (noting that a plaintiff

must make sufficiently detailed factual allegations in his complaint "to raise a right to relief

above the speculative level"); Nat'l Treasury Employees Union v. United States, 101 F.3d 1423,

1430 (D.C. Cir. 1996); Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994);

Holman v. Williams, 436 F.Supp. 2d 68, 73 (D.D.C. 2006).

        While a complaint filed by a pro se litigant such as Mr. White is held to a less stringent

standard than a pleading drafted by a lawyer, pro se litigants still must comply with the Federal

Rules of Civil Procedure and must present a claim on which the Court can grant relief.  See, e.g.,

McNeil v. United States, 508 U.S. 106, 113 (1993) (stating that the Supreme Court "[has] never

suggested that procedural rules in ordinary civil litigation should be interpreted as to [wholly]

excuse mistakes by those who proceed without counsel") (footnote omitted); Crisafi v. Holland,

665 F.2d 1305, 1308 (D.C. Cir.1981) (observing that "[a] pro se complaint, like any other, must

present a claim upon which relief can be granted by the court"); Clements v. Gonzales, 2007

W.L. 2137786, *3, n. 4 (D.D.C. 2007); Chandler v. Roche, 215 F.Supp.2d 166, 168 (D.D.C.

2002).  Applying these standards, the Court should dismiss Plaintiff's Complaint in its entirety.

**B.      Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure mandates summary judgment where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  See, e.g., Termorio S.A. E.S.P. v. Electranta S.P., 2007 W.L. 1515069, *12 (D.C. Cir. 2007); Kingman Park Civic Ass'n v. Williams, 348 F.3d 1033, 1041 (D.C. Cir. 2003); Washington Post Co. v. U.S. Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989).  As the Supreme Court has declared, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (emphasis added).

A plaintiff in a FOIA case must show that an agency has "(1) 'improperly' (2) 'withheld' (3) 'agency records.'"  See  United States Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989) (quoting Kissinger v. Reporters Comm. for Freedom of Press, 445 U.S. 136, 150 (1980)); see also 5 U.S.C. § 552(a)(4)(B).  The agency's burden is to establish that it has conducted a search reasonably calculated to uncover all responsive records.  See Oglesby v. United States Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Weisberg v. United States Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

Thus, summary judgment is available to a defendant agency in a FOIA case upon proof that it has fully discharged its obligations under the FOIA and the Privacy Act.  See, e.g., Steinberg v. U.S. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994); Weisberg v. Dep't. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984); Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1350 (D.C. Cir. 1983); Snyder, 230 F. Supp. 2d at 19-20.  An agency satisfies the summary

13

judgment requirements in a FOIA or Privacy Act case by showing that "each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." See Weisberg v. U.S. Dep't of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980) (quoting Nat'l Cable Television Ass'n v. FCC, 479 F. 2d 183, 186 (D.C. Cir. 1973)). Under the FOIA, "'[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" See, e.g., Consumer Fed'n of America v. Dep't of Agric., 455 F.3d 283, 287 (D.C. Cir. 2006) (citing Gallant v. NLRB, 26 F.3d 168, 171 (D.C. Cir.1994)); Negley v. F.B.I., 2006 W.L. 593032, **3 (D.C. Cir. 2006) ("[a]gency affidavits are accorded a presumption of good faith which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents") (citing SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir.1991)); McGehee v. Cent. Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983); Perry v. Block, 684 F.2d 121, 125-27 (D.C. Cir. 1982); Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir.1978); Snyder v. C.I.A., 230 F. Supp. 2d 17, 19-20 (D.D.C. 2002) (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)).

In this case, the agency Defendants have filed four detailed declarations with this pleading: two by individuals familiar with the steps taken by the FBI and IRS in responding to Plaintiff's FOIA/Privacy Act requests; one by a person familiar with EOUSA's procedures for determining whether that office has received a FOIA/Privacy Act request and then responding to them; and two by individuals familiar with a public corruption probe of Plaintiff and the nature of the documents which he has sought from the IRS. See Ex. 2, Hardy Decl. ¶¶ 1-4; Ex. 5,

14

Luczynski Decl. ¶¶ 1-3; Ex. 6, Stewart Decl. ¶ 1; Ex. 11, Olgy Decl. ¶¶ 1-2; Ex. 12, Keys Decl.

¶¶ 1-3.  Since Defendants' declarations demonstrate that the FBI, EOUSA, and IRS all met their

obligations under the FOIA and the Privacy Act, and the pleadings and other filings show no

genuine issue as to any material fact and the Defendants are entitled to judgment as a matter of

law, dismissal, or in the alternative, summary judgment should be granted to the Defendants.

**II.   Since the EOUSA Never Even Received Plaintiff's FOIA Request, his Claim Against that Agency Should Be Dismissed, or in the Alternative, EOUSA is Entitled to Summary Judgment With Respect to that Claim**

Plaintiff alleges that he "mailed" a FOIA request to the United States Attorneys Office in

Washington, D.C. "on or about January 29, 2007," see Compl. at 2, ¶ II.  As has been mentioned,

the EOUSA, the agency responsible for processing FOIA requests sent to the USAO,

unequivocally contends that it never received a FOIA request from Plaintiff, and that a thorough

review of their records confirmed this conclusion.  See Ex. 5, Luczynski Decl.  This court has

recognized on numerous occasions that an agency's obligations under the FOIA are only

triggered when it receives a proper FOIA request (with mere  mailing by a requestor insufficient

to trigger those obligations), and thus that dismissal of a FOIA claim is appropriate where a

plaintiff cannot establish that the agency actually received the relevant FOIA request.[4]  If Plaintiff

---

[4]  See, e.g., Schoenman v. F.B.I., 2006 W.L., 1126813, *12 (D.D.C. 2006) (explaining that "an agency's obligations under FOIA are not established by the averred mailing of a FOIA request," but "[r]ather, the plain language of the statute states that '[e]ach agency, upon any request for records made under paragraphs (1), (2), or (3) of this subsection, shall determine with twenty days . . . after receipt of any such request to comply with such request.'") (citing 5 U.S.C. § 552(a)(6)(A)(I)) (emphasis in original); Hutchins v. Dep't of Justice, 2005 WL 1334941, at *2 (D.D.C. June 6, 2005) ("[w]ithout any showing that the agency received the request, the agency has no obligation to respond to it"); Carbe v. Bureau of Alcohol, Tobacco and Firearms, 2004 W.L. 2051359, *8 (D.D.C. 2004) (explaining that "[i]f no FOIA request is received, an agency has no reason to search or produce records and similarly has no basis to respond" and concluding that "[o]nce Customs responded that it had never received a FOIA request from Mr. Carbe, the

wishes to pursue his request for USAO documents, he is certainly free to mail a new FOIA

request to the EOUSA now that he is on notice of the fact that they never received his original

request.  See, e.g., Carbe, 2004 W.L. 2051359 at *8.  He could even mail that request by certified

mail with return receipt requested if he wishes to be able to later establish receipt.  In the

meantime however, his claim against the USAO should be dismissed, or in the alternative,

summary judgment should be granted to the USAO.  See Fed. R. Civ. P. 12(b)(6), 56.


III.    **Plaintiff's Claim Against the IRS Should be Dismissed Because He Failed to
        Exhaust His Administrative Remedies**

It is well-established in administrative law "'that no one is entitled to judicial relief for a

supposed or threatened injury until the prescribed administrative remedy has been exhausted.'"

See McKart v. United States, 395 U.S. 185, 193 (1969) (internal citation omitted); see also

United States v. Tucker Truck Lines, 344 U.S. 33, 36-37 (1952) (observing that "orderly

procedure and good administration" as well as "[s]imple fairness to those who are engaged in the

tasks of administration, and to litigants" require that "objections to the proceedings of an

administrative agency be made while it has opportunity for correction in order to raise issues

reviewable by the courts").  A FOIA requester, in particular, must exhaust his or her

administrative remedies before seeking judicial review, and absent exhaustion, a FOIA suit is

subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[5]  The purpose

---

suit alleging a violation of FOIA was doomed"); Dale v. Internal Revenue Serv., 238 F. Supp. 2d
99, 103 (D.D.C. 2002) (recognizing that "[a]n agency's obligations commence upon receipt of a
valid request"); see also Brace v. Dep't of Treasury, 2000 W.L. 1719498, *1 (D.D.C. 2000);
Guzzino v. F.B.I., 1997 W.L. 22886, *2 (D.D.C. 1997).

    [5]  See, e.g., Thompson v. Drug Enforcement Admin., 2007 W.L. 1814949, *9 (D.C. Cir.
2007); Wilbur v. C.I.A., 355 F.3d 675, 677 (D.C. Cir. 2004) (observing that "[e]xhaustion of

of this requirement is to give the agency "an opportunity to exercise its discretion and expertise

on the matter and to make a factual record to support its decision," as well as to allow "the top

managers of an agency to correct mistakes made at lower levels and thereby obviate[]

unnecessary judicial review."  See Oglesby, 920 F.2d at 61 (internal citation omitted); Greenberg

v. U.S. Dep't of Treasury, 10 F.Supp.2d 3, *22 (D.D.C. 1998.) (explaining that "[t]he possibility

that administrative review may obviate the need for judicial review is particularly important in

FOIA cases, because FOIA cases require district judges to take time out of their busy schedules

to 'acquire access to reams of paper, make intensive review of that material, and reach document-

specific conclusions.'") (internal citation omitted).

FOIA requests must be filed in accordance with published agency regulations.  See, e.g.,

5 U.S.C. § 552(a)(3) (requests must be made "in accordance with [the agency's] published rules

stating the time, place, fees (if any), and procedures to be followed . . . ."); West v. Jackson, 448

F.Supp.2d 207, 211 (D.D.C. 2006) (noting that "[a] requester must comply with an agency's

published regulations for filing a proper FOIA request"); Ivey v. Snow, 2006 W.L. 2051339, *3

---

administrative remedies is generally required before seeking judicial review"); Hidalgo v. F.B.I.,
344 F.3d 1256, 1258-60 (D.C. Cir. 2003) (noting that "the FOIA's administrative scheme favors
treating failure to exhaust as a bar to judicial review," and remanding with instruction for district
court to dismiss under Fed. R.Civ. P. 12(b)(6) for failure to exhaust under the FOIA); Sinto v.
Dep't of Justice, 176 F.3d 512, 516 (D.C. Cir. 1999); Oglesby v. United States Dep't of the
Army, 920 F.2d 57, 61-62 (D.C. Cir. 1990) (noting that "[c]ourts have consistently confirmed
that the FOIA requires exhaustion of this appeal process before an individual may seek relief in
the courts," finding that "[e]xhaustion of administrative remedies is generally required before
filing suit in federal court and holding that failure to exhaust precludes judicial review if "the
purposes of exhaustion" and the "particular administrative scheme" support such a bar); see also
Citizens for Responsibility and Ethics in Washington v. Dep't of Interior, 2007 W.L. 2206905,
*7 (D.D.C. 2007); Clemmons v. U.S. Dep't of Justice, 2007 W.L. 1020796, *5 (D.D.C. 2007);
Lowe v. Drug Enforcement Admin., 2007 W.L. 2104309, *3 (D.D.C. 2007); Anderson v. U.S.
Dep't of Justice, 2007 W.L. 915221, *3 (D.D.C. 2007); Melville v. U.S. Dep't of Justice, 2006
W.L. 2927575, *3 (D.D.C. 2006).

(D.D.C. 2006); <u>Dale v. Internal Revenue Serv.</u>, 238 F.Supp.2d 99, 103 (D.D.C. 2002) ( "[f]ailure to comply with agency FOIA regulations amounts to a failure to exhaust administrative remedies, which warrants dismissal.")  The IRS's FOIA regulations can be found in 26 C.F.R. § 601.702.

The FOIA establishes an administrative process.  Under that act, except in certain specified "unusual circumstances," <u>see</u> 5 U.S.C. § 552(a)(6)(B)(i), an agency receiving a request for information is required to:

> (i) determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination; and

> (ii) make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal.

<u>See</u> 5 U.S.C. § 552(a)(6)(A)(i), (ii).  If the denial of the request is upheld on appeal, the agency must "notify the person making such request of the provisions for judicial review of that determination."  <u>See</u> <u>id.</u> § 552(a)(6)(A)(ii).

If an agency does not respond to a FOIA appeal within 20 workdays, a requester may treat the failure as a constructive exhaustion of administrative remedies.  <u>See</u> 5 U.S.C. § 552(a)(6)(C). However, under both the FOIA statute and IRS implementing regulations, the twenty-day time period does not run until the request is received by the appropriate office in the agency.  <u>See</u> 5 U.S.C. § 552(a)(3); 26 C.F.R. §§ 601.702(c)(4)(i)(C) (portion of IRS FOIA regulations which requires that an initial FOIA request "[b]e addressed to and mailed to the office of the IRS official who is responsible for the control of the records requested . . . regardless of where such records are maintained"), 601.702(h) (listing the responsible officials and their addresses).

In this case, Plaintiff failed to file a proper FOIA request with the proper IRS office for two reasons, despite being given several opportunities to correct his FOIA request.

First, Plaintiff addressed and mailed his FOIA request to the wrong office.  IRS's FOIA regulations made it plain that "[g]enerally, requests for records pertaining to the requester, or other matters of local interest should be directed to the office serving the geographic area of residence" whereas only records "concerning matters of nationwide applicability, such as published guidance (regulations and revenue rulings), program management, operations, or policies, should be directed to the Headquarters Disclosure Office."  See 26 C.F.R. §§ 601.702(c)(4)(i)(C).  The regulations further advised that "[i]f the person making the request does not know the official responsible for the control of records being requested, the person making the request may contact, by telephone or in writing, the disclosure office serving the requester's geographic area of residence to ascertain the identity of the individual having control of the records being requested so that the request can be addressed, and delivered, to the appropriate responsible official."  See id.  The regulations further listed the responsible officials and their addresses.  See 26 C.F.R. § 601.702(h).  Notwithstanding this guidance, and despite the fact that Plaintiff's FOIA request sought "records pertaining to the requester" and regarding a "matter[] of local interest," as opposed to a "matter[] of nationwide applicability, Plaintiff improperly addressed and mailed his FOIA request to the National Office in Washington, D.C., not with a local disclosure office.  See 26 C.F.R. §§ 601.702(c)(4)(i)(C); Ex. 7, Plaintiff's January 28, 2007 letter to the IRS.  Plaintiff' s failure to send his FOIA request to the correct office is one of at least two reasons that his claim against the IRS is subject to dismissal for failure to exhaust, and that the IRS is entitled to summary judgment on Plaintiff's claim against

that agency.  See Fed. R. Civ. P. 12(b)(6), 56.[6]

Nevertheless, in the interest of serving the general public, the IRS generally attempts and in this case did attempt to forward the FOIA request to the appropriate office.  Thus, despite this infirmity in Plaintiff's initial FOIA request, upon receipt, the IRS headquarters forwarded his FOIA request to the IRS's Disclosure Office in Baltimore, Maryland, where it was received on February 9, 2007.  See  See Ex. 7, Plaintiff's January 28, 2007 Letter to the IRS (with stamp indicating date of receipt by the Baltimore Disclosure Office); see also Ex. 8, March 7, 2007 letter from the IRS to Plaintiff.  The IRS's Baltimore Disclosure Office then forwarded the request to the Detroit Disclosure Office for processing, which received it on February 13, 2007.  See Ex. 6, Stewart Decl. ¶ 2; Ex. 8, March 7, 2007 letter from the IRS to Plaintiff (indicating the date of receipt by the Detroit Disclosure Office).

As the Detroit Disclosure Office found, Plaintiff's FOIA request was improper for a second reason: because it failed to satisfy the regulatory requirement that an initial FOIA request "[r]easonably describe the records in accordance with paragraph (c)(5)(I)."  See 26 C.F.R. §§ 601.702(c)(4)(i)(D).  Paragraph (c)(5)(i) in turn states that:

---

[6]  See also Lowe v. Drug Enforcement Admin., 2007 W.L. 2104309, *5 (D.D.C. 2007) (finding that Plaintiff's FOIA request was not properly submitted because it was sent to the wrong address, and thus that Plaintiff failed to properly exhaust his administrative remedies); Kessler v. United States, 899 F.Supp. 644, 645 (D.D.C. 1995) (when a plaintiff "did not address and mail his FOIA request to the office of the official who [was] responsible for the control of the records requested," he "failed to follow the procedures set forth in the [agency] regulations" and "failed to make a proper request under the FOIA and therefore [ ] failed to exhaust his administrative remedies" such that "his complaint must be dismissed."); Thorn v. Soc. Security Admin., Civ. No. 04-1282, 2005 U.S. Dist. LEXIS 11895 at *9 (D.D.C. June 11, 2005) ("A FOIA request sent to the wrong office is subject to dismissal for the requester's failure to exhaust administrative remedies."); see also Flowers v. I.R.S., 307 F. Supp.2d 60 (D.D.C. 2004) (observing that "the plaintiff's failure to file a request that comports with agency FOIA regulations constitutes failure to exhaust administrative remedies").

The request for records must describe the records in reasonably sufficient detail to enable the IRS employees who are familiar with the subject matter of the request to locate the records without placing an unreasonable burden upon the IRS. While no specific formula for a reasonable description of a record can be established, the requirement shall generally be satisfied if the requester gives the name, taxpayer identification number (e.g., social security number), subject matter, location, and years at issue, of the requested records. If the request seeks records pertaining to pending litigation, the request shall indicate the title of the case, the court in which the case was filed, and the nature of the case. It is suggested that the person making the request furnish any additional information which shall more clearly identify the requested records. Where the requester does not reasonably describe the records being sought, the requester shall be afforded an opportunity to refine the request. Such opportunity may involve a conference with knowledgeable IRS personnel at the discretion of the disclosure officer. The reasonable description requirement shall not be used by officers or employees of the Internal Revenue as a device for improperly withholding records from the public.

See 26 C.F.R. § 601.702(c)(5)(i).

Plaintiff's request sought "the Official Investigation Report[s] and persons interviewed concerning Robert White of Gary, Indiana: Court Case # 2:05-CR-00079 by the IRS Agents." See Ex. 7, Plaintiff's January 28, 2007 letter; see also Ex. 6, Stewart Decl. ¶¶ 3-4. However, Plaintiff had given no indication of where the responsive records might be located. Id. Furthermore, his reference to a court docket number would be of no help to the Disclosure Officer in determining what the plaintiff was requesting. Id.

Accordingly, by letter dated March 7, 2007, the IRS's Detroit Disclosure Office informed plaintiff that in order for plaintiff's FOIA request "to constitute a valid request under the Act, certain requirements must be met." See Ex. 6, Stewart Decl. ¶¶ 3-4; Ex. 8, March 7, 2007 letter from the IRS to Plaintiff. Specifically, the Detroit Disclosure Office asked plaintiff to provide the following information: (1) The specific division which maintains the records; and, (2) any other information, which will aid us in locating the requested records (such as the name of the

21

IRS employee assigned to your case).  Id.  The March 7, 2007 letter informed Plaintiff that the

twenty day period for complying with his FOIA request would not begin until Plaintiff perfected

his request by providing the IRS with information regarding the specific division that maintained

the records which Plaintiff wished to access and any other information that could help the IRS

locate the records he had requested.  Id.  It requested that Plaintiff furnish this information to the

IRS's Detroit Disclosure Office within 30 days.  Id.  Thus, the IRS explained the deficiencies of

plaintiff's FOIA/Privacy Act request to the plaintiff, and made a reasonable effort to assist the

plaintiff in perfecting his request.

 Plaintiff did not respond to the Disclosure Office's March 7, 2007 letter.  Instead, he

submitted an "Appeal of Denial of F.O.I.A./PA Request" on March 16, 2007.  See Ex. 6, Stewart

Decl. ¶ 5; Ex. 9, March 16, 2007 letter from Plaintiff to the IRS.  Upon receipt of plaintiff's

Appeal letter, the Detroit Disclosure Office informed plaintiff, in a letter dated March 21, 2007

that, because his FOIA request was "imperfect," no appeal rights had resulted.  See Ex. 10,

March 21, 2007 letter from the IRS to Plaintiff; see also Ex. 6, Stewart Decl. ¶ 6.  Plaintiff was

advised that he should take the opportunity to "perfect" his FOIA request.  Id.  He was further

advised that, if, after perfecting his request, the Detroit Disclosure Office was unable to locate

documents responsive to his request or if there were no responsive documents, plaintiff's rights

of appeal would apply.  Id.

 Plaintiff did not respond to the Detroit Disclosure Office's March 21, 2007 letter.

Instead, he filed the above captioned lawsuit.  Because Plaintiff's FOIA request was technically

deficient when received by the IRS, it was considered an "imperfect" request.  With respect to an

"imperfect" request, plaintiff's appeal rights do not attach.  As such, Plaintiff failed to exhaust

22

administrative remedies prior to filing the above-captioned lawsuit, and Plaintiff's claims against the IRS should be dismissed on this basis.  See, e.g., Fed. R. Civ. P. 12(b)(6); Flowers v. Internal Revenue Serv., 307 F.Supp.2d 60, 69-70 (D.D.C. 2004) ("[g]iven that the plaintiff failed to perfect her initial request and judicial review of the request clearly would prematurely interfere with the agency process, the court declines to review the initial request" and, on this basis, granting "the defendant's motion for summary judgment as to the plaintiff's initial request"); Dale v. Internal Revenue Serv., 238 F.Supp.2d 99, 103 (D.D.C. 2002) ("[a]n agency's obligations commence upon receipt of a valid request; failure to file a perfected request therefore constitutes failure to exhaust administrative remedies"); Judicial Watch, Inc. v. F.B.I., 2001 WL 35612541, *12 (D.D.C. 2001) ("[a] FOIA requester is deemed to have failed to exhaust administrative remedies whenever the requester does not comply with the administrative process set forth under the FOIA, including . . . (2) failure to reasonably describe the records being sought") (internal citation omitted).

### IV. Plaintiff's Claims Against the FBI and IRS Should be Dismissed as Those Agencies Each Conducted an Adequate Search and Responded Reasonably to His Requests

#### A. The FBI Conducted an Adequate Search for the Portion of Plaintiff's FOIA Request Which Sought Records Regarding Himself

As has been noted, the FOIA request which Plaintiff sent to the FBI sought documents concerning (1) Plaintiff, as well as (2) third parties.  See Ex. 2, Hardy Decl. ¶ 5; Ex. 3, Plaintiff's January 28, 2007 letter to the FBI.  These two components of his request are considered in turn.

As the attached Declaration of David M. Hardy makes clear, the FBI's Headquarters does not have any records related to Plaintiff.  See Ex. 2, Hardy Decl. generally.  Thus, the only issue that Plaintiff could contest with regard to the portion of his FOIA request which concerns himself

23

is whether FBI conducted an adequate search for records responsive to this portion of his request.

In responding to a FOIA/Privacy Act request, an agency is under a duty to conduct a reasonable

search for responsive records: no more and no less.  See, e.g., Oglesby, 920 F.2d at 68; Meeropol

v. Meese, 790 F.2d 942, 952-53 (D.C. Cir.1986) (search is not presumed unreasonable simply

because it fails to produce all relevant material); Weisberg v. United States Dep't of Justice, 745

F.2d 1476, 1485 (D.C. Cir.1984); Weisberg v. United States Dep't of Justice, 705 F.2d 1344,

1351-52 (D.C. Cir. 1983); Perry v. Block, 684 F.2d 121, 128 (D.C. Cir. 1982) (agency need not

demonstrate that all responsive documents were found and that no other relevant documents

could possibly exist); Weisberg v. United States Dep't of Justice, 627 F.2d 365, 371 (D.C. Cir.

1980); Marks v. United States Dep't of Justice, 578 F.2d 261, 263 (9th Cir. 1978) (no

requirement that an agency search every division or field office on its own initiative in response

to a FOIA request when the agency believes responsive documents are likely to be located in one

place); Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health and Human Servs., 844 F. Supp.

770, 776 (D.D.C. 1993).  The adequacy of a search is necessarily "'dependent upon the

circumstances of the case.'"  See, e.g., Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir.

1990); Weisberg, 705 F. 2d at 1351; Kronberg v. Dep't of Justice, 875 F. Supp. 861, 869 (D.D.C.

1995).  "[A] search need not be perfect, only adequate, and adequacy is measured by the

reasonableness of the effort in light of the specific request."  See Meeropol, 790 F.2d at 956.

Indeed, an agency is not required to search every record system, but need only search

those systems in which it believes responsive records are likely to be located.  See, e.g., Oglesby,

920 F.2d at 68.  Additionally, the search standards under the FOIA and the Privacy Act do not

place upon the agency a requirement that it prove that all responsive documents have been

located.  See Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 892, n.7 (D.C. Cir. 1995);

Perry, 684 F.2d at 128 .  Even when a requested document indisputably exists or once existed,

summary judgment will not be defeated by an unsuccessful search for the document so long as

the search was diligent.  Id.  Additionally, the mere fact that a document once existed does not

mean that it now exists; nor does the fact that an agency created a document necessarily imply

that the agency has retained it.  See, e.g., Maynard v. CIA, 986 F.2d 547, 564 (1st Cir. 1993).

        The burden rests with the agency to establish that it has "made a good faith effort to

conduct a search for the requested records, using methods which can be reasonably expected to

produce the information requested." See, e.g., Baker & Hostetler LLP v. U.S. Dep't of

Commerce, 473 F.3d 312, 318 (D.C. Cir. 2006); Oglesby, 920 F.2d at 68.  "An agency may prove

the reasonableness of its search through affidavits of responsible agency officials so long as the

affidavits are relatively detailed, non-conclusory and submitted in good faith."  See Miller, 779

F.2d at 1383; Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1987).  Once

the agency has proffered such evidence, i.e., a legally-sufficient affidavit, the burden then shifts

to the requester to rebut the evidence by a showing of bad faith on the part of the agency.  See

Miller, 779 F.2d at 1383.  It is insufficient, however, for a requester to attempt to rebut the

agency affidavit with purely speculative claims.  See Carney v. U.S. Dep't of Justice, 19 F.3d

807, 813 (2d Cir. 1994); SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1200 (D.C. Cir. 1991)

(explaining that "[a]gency affidavits are accorded a presumption of good faith, which cannot be

rebutted by "purely speculative claims about the existence and discoverability of other

documents"); Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir.1981).

The declaration of David M. Hardy demonstrates through detailed, non-conclusory averments that, in this case, the FBI engaged in a "good faith effort to conduct a search for the requested records, using methods which [were] reasonably expected to produce the information requested." See Oglesby, 920 F. 2d at 68; Ex. 2, Hardy Decl generally. The declaration describes in detail the type of search that was conducted to locate documents responsive to those portions of Plaintiff's request which concern himself. See Ex. 2, Hardy Decl. ¶¶ 19-22. The FBI searched covered its Central Records System ("CRS") and its Electronic Surveillance ("ELSUR") Indices. Id. at ¶¶ 19-20. The Hardy Declaration explains in detail how information is organized in the CRS system and in the ELSUR indices, and what sort of information is indexed. Id. at ¶¶ 9-18. The Hardy Declaration makes clear what search terms were utilized and that the search resulted in a no records response. Id. at ¶ 19-22. Accordingly, because the FBI conducted a reasonable search of files in which responsive documents were likely to be found, the FBI search was adequate. Plaintiff's claim against the FBI should be dismissed on this basis.

Inasmuch as the Plaintiff mailed his FOIA request to FBI's headquarters, the FBI was under no obligation to guess that a FBI field office might have responsive documents and to have that field office search for responsive documents as well.[7] If Plaintiff believes that there may be

---

[7] See, e.g., Kowalczyk v. Dep't of Justice, 73 F.3d 386 (D.C. Cir. 1996) (holding, in a case arising under analogous circumstances, that a prisoner's FOIA request for all records in agency files, including but not limited to a specific federal case number which had been sent to FBI headquarters in Washington, D.C. and made no reference to a field office did not enable the FBI to determine that its New York field office had responsive records and thus, FBI reasonably limited its search to files located at its headquarters); Kidder v. F.B.I., 2007 W.L. 1020784, *5 (D.D.C. 2007) (observing that "[g]enerally, the FBI is not obligated to undertake a search of its field office's records where a plaintiff's request is submitted directly to FBIHQ"); Servicemembers Legal Def. Network v. Dep't of Def. and Dep't of Justice, 471 F.Supp.2d 78, 85 (D.D.C. 2007) ("The FBI is not required to search its field offices when a requester has submitted its FOIA request only to FBI headquarters"); Ray v. F.B.I., 441 F.Supp.2d 27, 32 (D.D.C. 2006)

any documents in one of FBI's field offices responsive to his request and wants the FBI to search

for those records, he must send a new FOIA request to that field office.  See Ex. 2, Hardy Decl.

¶ 22; see also 28 C.F.R. §§ 16.3(a), 16.41(a); Negley v. F.B.I., 2006 W.L. 593032, **1 (D.C. Cir.

2006) (unpublished) (noting that, "[u]nder Department of Justice regulations governing FOIA

requests, a person requesting 'records held by a field office of the [FBI] . . . must write directly to

that FBI . . . field office address.'") (citing 28 C.F.R. § 16.3(a)); Ray, 441 F. Supp.2d at 32

(noting that "[a] request for records maintained by a particular FBI field office must be submitted

directly to that field office" and that "[i]f plaintiff wants records that may be maintained in FBI's

South Carolina Field Office, he is free to submit a new FOIA request directly to that office");

Piccolo v. Executive Office for U.S. Attys, 2004 W.L. 759487, **1 (D.C. Cir. 2004)

(unpublished) (citing 28 C.F.R. § 16.3(a) and 16.41(a)).

     A Court has jurisdiction over a FOIA or a Privacy action only where an agency has

improperly withheld agency records.  See 5 U.S.C. § 552(a)(4)(B).  Here, the FBI has not

withheld any records, but rather, found no responsive documents to that portion of Plaintiff's

FOIA request which seeks documents concerning himself after a reasonable, thorough and

diligent search.  The FBI thus carried its burden to show that it conducted a search reasonably

calculated to uncover all responsive records.  See Weisberg, 745 F. 2d at 1485; Perry v. Block,

684 F.2d 121,126 (D.C. Cir. 1982).  That is all that is required.  Thus, the FBI is entitled to

judgment as a matter of law on Plaintiff's FOIA claims against that agency.

---

(same); Tooley v. Bush, 2006 W.L. 3783142, *13 (D.D.C. 2006); Marrera v. United States Dep't
of Justice, 622 F.Supp. 51, 54 (D.D.C. 1985) (noting that agency not required to "search every
division or field office in response to a FOIA request, especially where the requester has
indicated specific areas where responsive documents might be located").

27

**B.      The FBI's Response to the Portion of Plaintiff's FOIA Request which Sought Records Regarding Third Parties was Also Lawful**

As mentioned, the FBI declined to confirm or deny the existence of the documents concerning the six third parties which Plaintiff sought in his FOIA request, because Plaintiff did not provide a notarized Privacy Act form or proof of death for any of these six individuals.  See Ex. 2, Hardy Decl. at 3; id. at ¶¶ 23-30.  This was in keeping with the FBI's longstanding policy of neither confirming nor denying the existence of documents concerning third parties in such circumstances, in order to protect the third parties' privacy and to save them from potential embarrassment, stigma, and even being in serious physical danger.  See id. at ¶¶ 23-30 (explaining the legal and policy rationale for this policy, and how it is consistent with both the Privacy Act, 5 U.S.C. § 552a(b), two FOIA exemptions, 5 U.S.C. §§ 552(b)(6) and 552(b)(7), and 28 C.F.R. § 16.3(a)).  Several courts within this Circuit have upheld such a policy for the very reasons identified in the Hardy declaration.  See, e.g., id. at ¶¶ 23-30; Nation Magazine, Washington Bureau v. United States Customs Serv., 71 F. 3d 885, 893 (D.C. Cir. 1995) (recognizing that an agency may decline to confirm or deny the existence of responsive records "if confirming or denying the existence of records would associate the individual named in the request with criminal activity") (internal citations omitted); Fitzgibbon v. CIA, 911 F.2d 755, 767 (D.C.Cir.1990) (recognizing that "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation.") (quoting Branch v. FBI, 658 F.Supp. 204, 209 (D.D.C.1987)); Cong. News Serv. v. DOJ, 438 F.Supp. 538, 541 (D.D.C.1977) (observing that "an individual whose name surfaces in connection with an investigation may, without more, become the subject of rumor and innuendo"); Dunkelberger

v. Dep't of Justice, 906 F. 2d 779 (D.C. Cir. 1990) (upholding FBI's refusal to confirm or deny

whether it had records on administrative disciplinary action against named agent, because

confirmation or denial of their existence would have constituted an unwarranted invasion of

privacy under exemption 7(A)); Burke v. United States Dep't of Justice, 1999 W.L. 1032814, *3-

6 (D.D.C. 1999) (concluding that "[t]he FBI acted lawfully in refusing to confirm or deny the

existence of investigative law-enforcement records related to the third parties, protecting the

privacy of the third parties as contemplated by Exemption 7C")

     Plaintiff has not alleged and cannot reasonably claim that he provided a proof of death or

a privacy waiver for any of the 6 individuals covered by his third party FOIA requests to the FBI.

See Compl. *generally*.  He remains free to do so.  If and when he does so, the FBI would conduct

a search for responsive records, and would provide him with all non-exempt responsive records.

### C.    Even if Plaintiff had Exhausted his Claim Against the IRS, the Non Disclosure of the Material Plaintiff Sought Would be Appropriate as it is Within the Scope of FOIA Exemption (b)(3)

     The mandate to release documents under the FOIA does not apply to information that

falls within any of nine specific exemption categories listed in 5 U.S.C. § 552(b).  In the present

matter, no IRS records have been improperly withheld.  Instead, IRS has determined that the

information plaintiff seeks is exempt from disclosure pursuant to FOIA exemption (b)(3) in

conjunction with Fed. R. Crim. P. 6(e).  Exemption (b)(3) of the FOIA exempts from mandatory

disclosure matters that are:

> [s]pecifically exempted from disclosure by statute provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld. . . .

5 U.S.C. §552 (b)(3); <u>see also</u> <u>Essential Info., Inc. v. USIA</u>, 134 F.3d 1165, 1166-68 (D.C. Cir.

1998); <u>Irons & Sears v. Dann</u>, 606 F.2d 1215, 1219-20 (D.C. Cir. 1979).[8]

     Fed. R. Crim P. 6(e) explicitly bars disclosure of "matters occurring before the grand

jury," and serves to preserve the secrecy of the grand jury proceedings.  It has long been

recognized that Fed. R. Crim P. 6(e) qualifies as a FOIA exemption (b)(3) statute. <u>See</u>, <u>e.g.</u>, <u>Fund</u>

<u>for Constitutional Gov't v. Nat'l Archives and Records Serv.</u>, 656 F.2d 856, 867-68 (D.C. Cir.

1981) (soundly rejecting the argument that the Federal Rules of Criminal Procedure are not

"statutes" for FOIA Exemption (b)(3) purposes with respect to Rule 6(e)).  The scope of secrecy

encompassed within Fed. R. Crim. P. 6(e) is necessarily broad; it encompasses not only the direct

revelation of grand jury transcripts but also the disclosure of information which would reveal 'the

identities of witnesses or jurors, the substance of the testimony, the strategy or direction of the

investigation, the deliberations or questions of the jurors, and the like." <u>See</u> <u>Fund for</u>

<u>Constitutional Gov't</u>, 656 F.2d at 869 (quoting <u>SEC v. Dressler Indus., Inc.</u>, 628 F.2d 1368, 1382

(D.C. Cir. 1980)); <u>see also</u> <u>Iglesias v. CIA</u>, 525 F. Supp. 547, 556  (D.D.C. 1981) (observing that

"Rule 6(e) embodies a broad sweeping policy of preserving the secrecy of grand jury material

regardless of the substance in which such material is contained.")

     In <u>Senate of Puerto Rico v. United States Dep't of Justice</u>, 823 F.2d 574 (D.C. Cir. 1987),

the D.C. Circuit held that neither the fact that the information was obtained through the use of a

grand jury subpoena nor that the information was submitted to the grand jury was, by itself,

---

    [8] "Exemption 3 differs from other FOIA exemptions in that its applicability depends less
on the detailed factual contents of specific documents; the sole issue for decision is the existence
of a relevant statute and the inclusion of withheld material within the statute's coverage."
<u>Golland v. CIA</u>, 607 F.2d 339, 350 (D.C. Cir. 1978).

sufficient to warrant its non-disclosure under FOIA's Exemption 3.  Id. at 584.  Rather, there

must be a nexus between the release of the particular information and "revelation of a protected

aspect of the grand jury's investigation."  Id.

In this case, as explained by Special Agent Olgy in his Declaration, a careful examination

of each and every one of the documents Plaintiff seeks from the IRS indicates that all are grand

jury protected information.  See Ex. 11, Declaration of Walter C. Olgy; see also Church of

Scientology v. Internal Revenue Serv., 792 F.2d 146, 152 (D.C. Cir. 1986) (approving agency's

affidavit in support of Exemption 3 claim generically instead of by means of a Vaughn index),

cited with approval in Maydak v. United States Dep't of Justice, 218 F.3d 760, 766 (D.C. Cir.

2000) (also noting  that "[s]pecific holdings of this court and the Supreme Court permit the

satisfaction of the government's burden of proof under many of the other exemptions claimed

here through generic, categorical showings"); Tax Analysts v. Internal Revenue Serv., 414

F.Supp.2d 1, *4 (D.D.C. 2006) (finding that "[a] Vaughn index is . . . unnecessary to the

resolution of plaintiff's FOIA request"); Snyder v. CIA, 230 F.Supp.2d 17, 21-22 (D.D.C. 2002).

As such, all potentially responsive documents related to the investigation of plaintiff are exempt

from disclosure pursuant to FOIA exemption (b)(3) in conjunction with Fed. R. Crim. P. 6(e), the

Grand Jury exception.

**D.    The Documents Plaintiff Requested From the IRS Are Also Exempt From the Privacy Act's Disclosure Requirements**

Plaintiff fashioned his January 28, 2007 request as a "FOIA/Privacy Act request."  See

Ex. 7, Plaintiff's January 28, 2007 letter to the IRS.   The Privacy Act applies to "records" about

"individuals" that are "maintain[ed]" by federal agencies in "systems of records."  See 5 U.S.C.

31

§ 552a.  The Privacy Act gives individuals access to federal agency records pertaining to them.

Id.  Under 5 U.S.C. § 552a(d)(1) of the Privacy Act, an agency that maintains a system of records

shall, upon request, disclose all of the information pertaining to that person that is contained in

the agency's records.  Id.  The agency may, however, promulgate rules to exempt certain

information from disclosure.  See 5 U.S.C. §§ 552a(e)(9), 552a(f), 552a(j), 552a(k).

In particular, subsection (j)(2) of the Privacy Act allows an agency by regulation to

exempt from mandatory disclosure systems of records

> maintained by an agency or component thereof which performs as its principal
> function any activity pertaining to the enforcement of criminal laws, including
> police efforts to prevent, control, or reduce crime or to apprehend criminals, and
> the activities of prosecutors, courts, correctional, probation, pardon, or parole
> authorities, and which consists of (A) information compiled for the purpose of
> identifying individual criminal offenders and alleged offenders and consisting
> only of identifying data and notations of arrests, the nature and disposition of
> criminal charges, sentencing, confinement, release, and parole and probation
> status; (B) information compiled for the purpose of a criminal investigation,
> including reports of informants and investigators, and associated with an
> identifiable individual; or (C) reports identifiable to an individual compiled at any
> stage of the process of enforcement of the criminal laws from arrest or indictment
> through release from supervision.

5 U.S.C. § 552a(j)(2).

In this case, the records Plaintiff has requested from the IRS can be described as criminal

investigation records, which are maintained in the IRS's Systems of Records 46.002, which is

currently entitled "Criminal Investigation Management Information System (CIMIS)-

Treasury/IRS," and was formerly known as the "Case Management and Time Reporting System,

Criminal Investigation Division."  See 31 C.F.R. § 1.36; 66 Fed. Reg. 63784-01, 63842 (2001);

57 Fed. Reg. 13900-01, 14079 (1992).  In accordance with 5 U.S.C. § 552a(j)(2), this system of

records has been designated as exempt from access by individuals about whom information is

maintained in the system.  Id.  Pursuant to the Privacy Act, the IRS has promulgated rules to

exempt from disclosure investigative material compiled for law enforcement purposes.  See

5 U.S.C. § 552a(j), 552(k)(2); 31 C.F.R. §§ 1.36(a) (explaining that "[i]n accordance with 5

U.S.C. 552a(j) and (k) and § 1.23(c), the Department of the Treasury hereby exempts the systems

of records identified below from the following provisions of the Privacy Act for the reasons

indicated"), 1.36(c)(viii) (identifying IRS 46.002, the IRS's "Case Management and Time

Reporting System, Criminal Investigation Division" as being among the systems of records to

which the exemption is subject).  The "[c]ategories of individuals covered by the system" are the

"[s]ubjects and potential subjects of Criminal Investigation Division investigations, Special

Agents, U.S. Area Court Judges and U.S. Attorneys"  See 66 Fed. Reg. 63784-01, 63842 (2001)

(referring to the same system of records, IRS 46.002, but using a different "system name"); see

also 57 Fed. Reg. 13900-01, 14079 (1992) (using the original name for the system of records, and

a similar definition of the individuals covered).  The "[c]ategories of records in the system" are

"[p]ersonal and financial information developed in criminal tax investigations, potential tax

investigations and in projects including information from other Federal, state and local agencies."

See 66 Fed. Reg. at 63842-43; see also 57 Fed. Reg. at 14080.  The information Plaintiff has

sought from the IRS clearly concerns a person who has been the actual and potential subject of a

tax related criminal investigation, Judges, and U.S. Attorneys (namely himself) and "information

developed in criminal tax investigations, potential tax investigations."  Id. at 14079-80; Ex. 7,

Plaintiff's January 28, 2007 letter to the IRS (citing to 2:05-CR-00079, and referencing an

official investigation report and persons inteviewed by IRS agents);Criminal Docket Sheet for

2:05-cr-00079-RL-APR (N.D. Ind.); United States v. Robert White, 472 F. 3d 458, 460 (7th Cir.

33

2006) (decision upholding Plaintiff's criminal conviction).  Because the information that plaintiff

seeks is investigative reports and lists of persons interviewed, i.e., criminal investigative

information, the IRS has determined that the information is exempt from disclosure pursuant to

exemption (j)(2) of the Privacy Act.  See Ex. 6, Stewart Decl. ¶ 8; Ex. 11, Declaration of Walter

C. Olgy ("Olgy Decl.") *generally*; Ex. 12, Keys Decl. *generally*.  This court has upheld such a

finding in the past.  See , e.g., Augarten v. U.S. Dep't of Treasury, I.R.S., 1995 W.L. 350805, *2

(D.D.C. 1995) (finding that "[a]s to plaintiff's Privacy Act claim, the defendant is entitled to

judgment as a matter of law" because "[p]ursuant to Privacy Act [e]xemption j(2), the . . . [IRS]

has properly declared that records such as those plaintiff seeks, which are included in the Case

Management and Time Reporting System, Criminal Investigation Division, of the IRS, are

exempt from the access provisions of the Privacy Act").

## **CONCLUSION**

Plaintiff cannot establish any violation of the FOIA or the Privacy Act.  Plaintiff's claim

against the USAO should be dismissed because the EOUSA never received a FOIA request from

Plaintiff.  Plaintiff's claim against the FBI must be dismissed, or in the alternative, summary

judgment must be granted in the FBI's favor, because the FBI conducted a reasonable search of

the files located in its headquarters but was unable to locate any responsive documents

concerning Plaintiff despite its best efforts.  With respect to the portion of the FOIA request

which Plaintiff sent to the FBI concerning third parties, the FBI adhered to its longstanding

policy of neither confirming nor denying that it has records concerning third parties, a policy

which is consistent with the Privacy Act and the FOIA and has repeatedly been upheld by courts

within this Circuit.  Finally, Plaintiff's claim against the IRS is unavailing because (1) Plaintiff's

initial FOIA request was improper; (2) Plaintiff failed to perfect it despite being given several

opportunities to do so, and thus failed to properly exhaust; (3) in any event, the IRS's response

was reasonable, and  the documents and information sought from the IRS would have been

exempt from disclosure under both the FOIA and the Privacy Act.

WHEREFORE, Defendants respectfully submit that dismissal of this action is warranted,

and that summary judgment should be granted to them in this matter.


Respectfully submitted,


__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


__/s/_____
JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)

Of Counsel:

Sarah Jirousek-Wint
Assistant General Counsel
FOIA Litigation Unit
Office of the General Counsel
Federal Bureau of Investigation

David Luczynski
Attorney Advisor
EOUSA, FOIA/PA Unit

Eric P. Benson
Attorney
IRS, Office of the Chief Counsel
Procedure & Administration, Branch 7

Mary Ellen Keys
Attorney
IRS, Office of the Chief Counsel
Procedure & Administration, Branch 7

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT WHITE,                                    ) | |
| Plaintiff,                         ) | |
| v.                            ) | Civil Action No. 07–0838 (JDB) |
| FEDERAL BUREAU OF INVESTIGATION,     ) | |
| UNITED STATES ATTORNEYS,              ) | |
| and                           ) | |
| INTERNAL REVENUE SERVICE,            ) | |
| Defendants.                      ) | |

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Local Rule 7(h), Defendants submit this statement of material facts as to which there is no genuine issue:

**I.     The FOIA Request which Plaintiff sent to the FBI and the FBI's Response**

1.  By letter to the FBI's headquarters ("FBIHQ"), dated January 28, 2007, Plaintiff submitted a request for information under the FOIA and Privacy Act.  See Ex. 2, Declaration of David M. Hardy ("Hardy Decl.") ¶ 5; Ex. 3 (Plaintiff's January 28, 2007 letter to the FBI); see also Compl. at 2, ¶ I.  Plaintiff's FOIA/Privacy Act request was for

1.  [R]eport (s), documents, faxes and electronic computer messages by FBI agents concerning Robert White of Gary, Indiana.  The FBI reports concerning Scott L. King, Darnell Bolton, Kimberly Lyles, Stacy Shotwell all of Gary, Indiana, and Jesus Montes of Chicago, Illinois.

2.  Names and report (s) of any unknown persons that were interviewed by the FBI concerning Robert White: Court Case # 2:05-CR-00079, in Hammond, Indiana.

    3.  Jewell Harris, Sr., statements to the FBI concerning Robert White.

    4.  [A]ny and all electronic surveillance of Robert White by the FBI.

    5.  The official Investigation Report by the FBI concerning Robert White unredacted and no withheld reports.

See Ex. 3 (Plaintiff's January 28, 2007 letter to the FBI); Ex. 2, Hardy Decl. ¶ 5.

    2.  By letter dated February 20, 2007, FBIHQ stated that it had assigned plaintiff's request the Request Number 1070069, and explained that it had conducted a search of the indices of the Central Records System ("CRS") at FBIHQ for records responsive to his request and was unable to identify responsive records.  See Ex. 2, Hardy Decl. ¶ 6; Ex. 4 (FBI's February 20, 2007 letter to Plaintiff).  This letter indicated, however, that the search located references to a name similar to Robert White.  Id.  The FBI asked Plaintiff to furnish certain identifying information such as complete name, prior addresses, current and former employment information, and/or any specific incidents concerning his participation in an investigation that may have been conducted by the FBI.  Id.

    3.  In response to Plaintiff's FOIA request, the FBIHQ conducted a search of both its Central Records System and its Electronic Surveillance indices.  See Ex. 2, Hardy Decl. ¶¶ 19-21; see also id. at ¶¶ 9-14 (describing how the Central Records System is organized and searched); id. at ¶¶ 15-18 (describing how the Electronic Surveillance indices are organized and searched.)  Because Plaintiff directed his FOIA request to FBIHQ and not to any of the FBI's field offices, the FBI confined its search for responsive documents to its headquarters, and DOJ regulations put Plaintiff on constructive notice that it would do so.  See id. at ¶ 22 (citing 28 C.F.R. §§ 16.3(a) and 16.41(a)).

4.  The February 20, 2007 letter did not however respond to the portion of Plaintiff's request which sought documents concerning six third-party individuals: Scott L. King, Darnell Bolton, Kimberly Lyles, Stacy Shotwell, Jesus Montes, and Jewell Harris, Sr.  See Ex. 2, Hardy Decl. at 2, n. 1; id. at ¶¶ 23-30.  The FBI neither confirmed nor denied that it had any documents concerning those third parties because Plaintiff had not provided a notarized Privacy Act form or proof of death with respect to any of those six individuals.  See id. at ¶¶ 23-30.

5.  The FBI has no record of Plaintiff ever responding to its February 20, 2007 letter.  See Ex. 2, Hardy Decl. ¶ 7.  After waiting 30 days from the date of the February 20, 2007 letter, and not receiving further communication from him, the FBI administratively closed his request.  Id.

## II.    There is No Evidence that Plaintiff Ever Sent a FOIA Request to the USAO

6.  The Executive Office for United States Attorneys ("EOUSA"), United States Department of Justice, is the office responsible for, among other things: responding to requests and litigation filed under both the FOIA and the Privacy Act; the reviewing of FOIA/Privacy Act requests for access to records located in the EOUSA and ninety-four United States Attorney offices ("USAOs") and the case files arising therefrom; the reviewing of correspondence related to requests, reviewing of searches conducted in response to requests; locating of responsive records; and the preparing of responses thereto by the EOUSA to assure that determinations to withhold (or to release) such responsive records are in accordance with the provisions of both the FOIA and the Privacy Act, as well as the DOJ regulations.  See Ex. 5, Declaration of David Luczynski ("Luczynksi Decl.") ¶¶ 1-3.

3

7.  When requesters file a FOIA request with the EOUSA, it is in writing and generally delivered through the mail system operated by the US Postal Service.  See id. at ¶ 4.  Not all, though a large majority is sent using a confirmation receipt.  See id. at ¶ 4.  All mail received is opened immediately and date-stamped by the FOIA intake staff.  See id. at ¶ 5.  Each new request gets its own file opened up under the requester's name as well as assigned a FOIA number for identification and location purposes.  See id. at ¶ 5.  After that each FOIA request is entered into the computer filing system which is updated with new developments as they arise.  See id. at ¶ 5.

8.  To this day, EOUSA has no record of ever receiving any communication, nor a request from the Plaintiff.  See id. at ¶ 6.

9.  To confirm that it has received no communication from Plaintiff, in connection with this litigation, EOUSA staff searched its files.  See id. at ¶ 6.  A search of EOUSA's computer system revealed another individual with a similar name but the request and entry itself dated back to 1997 indicating that it is a completely different matter.  See id. at ¶ 6.  In addition, the room used for storing recently-opened or pending FOIA requests was searched as well.  See id. at ¶ 6. All the files in this room are arranged alphabetically and there were none found with Plaintiff's name.  See id. at ¶ 6.

10.  As far as EOUSA is concerned, Plaintiff has never submitted a FOIA request to the USAO or to EOUSA.  See Ex. 5, Luczynksi Decl. at ¶ 7.  An examination of the PACER system by EOUSA staff in the hopes of perhaps locating an exhibit in the form of the original request letter to EOUSA attached to the complaint has also proved fruitless.  See id. at ¶ 7.

**III.    The FOIA Request Which Plaintiff Sent to the IRS, and the IRS's Response**

11.  By letter to the IRS, dated January 28, 2007, Plaintiff submitted a request for information under the FOIA and Privacy Act.  See Compl. at 2, ¶ III; Ex. 6, Declaration of Darlene Stewart ("Stewart Decl.") ¶ 2, Exhibit A; Ex. 7, Plaintiff's January 28, 2007 letter to the IRS.

12.  Plaintiff's January 28, 2007 FOIA request was addressed to:

Internal Revenue Service
1111 Constitution Ave., N.W.
Washington, D.C. 20224

See Ex. 6, Stewart Decl., Ex. A; Ex. 7, Plaintiff's January 28, 2007 letter to the IRS.

13.  In his FOIA request, Plaintiff asked that the IRS produce "the Official Investigation Report[s] and persons interviewed concerning Robert White of Gary, Indiana: Court Case # 2:05-CR-00079 by the IRS Agents."  See Ex. 6, Stewart Decl. ¶ 3, Ex. A; Ex. 7, Plaintiff's January 28, 2007 letter to IRS.

14.  The FOIA request was received by the IRS, and forwarded to the IRS's Baltimore Disclosure Office for its determination as to the appropriate Disclosure Office to handle the request on February 9, 2007.  See Ex. 6, Stewart Decl. ¶ 2, Ex. A, Ex. B; Ex. 7, Plaintiff's January 28, 2007 letter to the IRS (indicating date of receipt by the Baltimore Disclosure Office); Ex. 8, IRS's March 7, 2007 letter to Plaintiff.  On February 13, 2007, the IRS's Baltimore Disclosure Office forwarded the request to the Detroit Disclosure Office for processing.  See Ex. 6, Stewart Decl. ¶ 2, Ex. B; Ex. 8, IRS's March 7, 2007 letter to Plaintiff (indicating the date of receipt by the Detroit Disclosure Office).

15.  By letter dated March 7, 2007, the IRS's Detroit Disclosure Office responded to Plaintiff's request by informing him that additional information was needed before the Detroit Disclosure Office would be able to respond to his FOIA request.  See Ex. 6, Stewart Decl. ¶¶ 3-4, Ex. B; Ex. 8, IRS's March 7, 2007 letter to Plaintiff.  The March 7, 2007 letter informed Plaintiff that the twenty day period for complying with his FOIA request would not begin until Plaintiff perfected his request by providing the IRS with information regarding the specific division that maintained the records which Plaintiff wished to access and any other information that could help the IRS locate the records he had requested.  Id.  The letter requested that Plaintiff furnish this information to the IRS's Detroit Disclosure Office within 30 days.  Id.

16.  By letter dated March 16, 2007 and received by the Detroit Disclosure Office on March 16, 2007, Plaintiff submitted a form to the IRS's Detroit Disclosure Office titled "[a]ppeal of [d]enial of F.O.I.A./PA [r]equest."  See Ex. 6, Stewart Decl. ¶ 5, Ex. C; Ex. 9, Plaintiff's March 16, 2007 letter to the IRS.  In this March 16, 2007 form, Plaintiff construed the IRS's March 7, 2007 letter as a "[n]on-[r]esponsive [l]etter" and a denial of his FOIA request.  Id.  Plaintiff indicated that he wished to administratively appeal this purported denial, and he further demanded that he be provided a "specific indication of what material(s) is (are) being withheld, and what exemptions are being claimed".  Id.  Plaintiff did not however attempt, in his March 16, 2007 letter, to perfect his request by providing the information that had been requested in the IRS's March 7, 2007 letter.  Id.

17.  By letter dated March 21, 2007, the IRS's Detroit Disclosure Office informed Plaintiff that he did not have administrative appeal rights with respect to his January 28, 2007 FOIA request because his request was deemed "imperfect."  See Ex. 6, Stewart Decl. ¶ 6, Ex. D;

Ex. 10, IRS's March 21, 2007 letter to Plaintiff.  As such, the letter advised Plaintiff that until

such time as he perfected his request by supplying the additional requested information, his

request could not be deemed denied.  Id.

18.  The IRS's Detroit Disclosure Office did not receive any further communications

from Plaintiff.  See Ex. 6, Stewart Decl. ¶ 7.  Subsequently, the Detroit Disclosure Office was

informed that Plaintiff had filed a FOIA/Privacy Act lawsuit with respect to his January 28, 2007

FOIA request.  Id.

19.  Subsequent to Plaintiff's filing of this lawsuit, the IRS's Detroit Disclosure Office

determined that records responsive to Plaintiff's request were within the control of the IRS's

Criminal Investigation Division, Chicago Field Office, but that those records in their entirety

were grand jury protected information, exempt from disclosure under both the FOIA (exemption

(b)(3) in conjunction with Fed. R. Crim. P. 6(e)) and exemption (j)(2) of the Privacy Act.  See

Ex. 6, Stewart Decl. ¶ 8; Ex. 11, Declaration of Walter C. Olgy ("Olgy Decl.") generally; Ex. 12,

Declaration of Mary Ellen Keys ("Keys Decl.") generally.


Respectfully submitted,


__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


7

___/s/_____
JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)

8

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that, on this 22nd of August, 2007, I caused the foregoing

Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, Defendants'

Memorandum in Support of their Motion to Dismiss, or in the Alternative for Summary

Judgment, and Defendants' Statement of Material Facts Not in Dispute, and the accompanying

Declarations and other Exhibits, to be served on Plaintiff, <u>pro se</u>, by first-class mail, postage

prepaid, addressed as follows:

> Robert White
> R 08350-027
> DULUTH FEDERAL
>  PRISON CAMP
> Inmate Mail/Parcels
> P.O. Box 1000
> Duluth, MN 55814

> s/Jonathan C. Brumer
> _____
> JONATHAN C. BRUMER, D.C. BAR # 463328
> Special Assistant United States Attorney
> 555 4th Street, N.W., Room E4815
> Washington, D.C. 20530
> (202) 514-7431
> (202) 514-8780 (facsimile)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT WHITE,                                  ) | |
| )| |
| Plaintiff,        ) | |
| )| |
| v.        ) | Civil Action No. 07–0838 (JDB) |
| )| |
| FEDERAL BUREAU OF INVESTIGATION,    ) | |
| )| |
| UNITED STATES ATTORNEYS,        ) | |
| )| |
| and        ) | |
| )| |
| INTERNAL REVENUE SERVICE,        ) | |
| )| |
| Defendants.        ) | |
| )| |

## <u>ORDER</u>

UPON CONSIDERATION of Defendants' Motion to Dismiss, or in the Alternative, for

Summary Judgment, Plaintiff's Opposition thereto, and the entire record herein, it is this _____

day of _____, 2007,

ORDERED that Defendants' Motion be and hereby is granted; and it is

FURTHER ORDERED that the above-captioned action should be, and hereby is

DISMISSED from the Court's docket, with prejudice.


_____
JOHN D. BATES
United States District Court Judge

Copies of this order to:

Robert White
R 08350-027
Duluth Federal Prison Camp
Inmate Mail/Parcels
P.O. Box 1000
Duluth, MN 55814

Jonathan C. Brumer
Special Assistant United States Attorney
United States Attorney's Office
  for the District of Columbia
555 Fourth Street, N.W., Room E-4815
Washington, D.C. 20530